UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CORY HOLLAND, SR.,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES FOUTS,<br><br>    Defendant. | Case No. 21-12265<br>Honorable Laurie J. Michelson<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER OVERRULING HOLLAND'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [19], ADOPTING THE REPORT AND RECOMMENDATION [18], GRANTING FOUTS' MOTION TO DISMISS [13], AND GRANTING HOLLAND'S MOTION TO AMEND COMPLAINT [23]**

Cory Holland, Sr. brings this suit against James Fouts, Mayor of Warren, for interference in his dealings with his landlord. The timeline in this case is a bit unclear, however.

Holland says he was renting a house in Warren, Michigan that was infested with rats, cats, and insects. After informing his landlord about the infestation, he asked if he could break his lease and leave the house. His landlord apparently agreed. But a week later, Holland says that his landlord changed her mind because she had spoken to Fouts, who was her personal friend. Fouts allegedly told Holland's landlord "to go after" Holland. And because the landlord allegedly changed her mind after Fouts' intervention, Holland was forced to pay rent for the Warren home while the landlord renovated the home (perhaps to address the infestation). After his landlord was finished with the repairs, Holland moved back into the home. But after some

time, Holland's landlord sued to evict him from the house for failure to pay rent. Holland states that during the eviction proceedings, city employees, following Fouts' direction, lied about whether the house was infested.

So Holland filed a pro se complaint alleging that Fouts violated the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1, PageID.4.) All pretrial matters were referred to Magistrate Judge Elizabeth Stafford. Fouts filed a motion to dismiss Holland's complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) Magistrate Judge Stafford recommended that the motion be granted and that the case be dismissed.

The Magistrate Judge gave three reasons for recommending dismissal. One, that Holland's claim that he was "forced to stay in the property against his will" because of Fouts was "implausible and outlandish" because public court records show that Holland fought his eviction and Holland admitted that he had moved out of the property at one point. (ECF No. 18, PageID.173.) Two, that Holland does not allege Fouts acted with discriminatory intent or purpose, which is required to make an equal-protection claim. (*Id.* at PageID.174.) And three, that Holland cannot make a due-process claim because his lease had expired by the time he was evicted, and so he had no property interest protected by due process. (*Id.* at PageID.177.)

Holland objects to this recommendation. Holland first objects to the "complaint being dismissed," arguing that his landlord only started displaying animus against him after she consulted with Fouts. (ECF No. 19, PageID.183–184.) Holland also objects to the complaint being found insufficient or implausible. (*Id.* at PageID.186.)

2

He explains that he misunderstood the directions to be "brief" on the pro se complaint form he used, and thus, he only wrote a short summary of his allegations. (*Id.*) Holland's third objection is a bit unclear (and is titled "Plaintiffs appeals") but seems to be a general objection arguing that the reason Holland "lost in court" was because the "city was working with the landlord against a disabled man for issues they both knew were present before the plaintiff moved into the home." (*Id.* at PageID.186–187.) Fouts filed a response to these objections. (ECF No. 21.)

For the reasons explained below, the Court will overrule Holland's objections and adopt the Report and Recommendation. Holland's complaint will be dismissed. But the Court will grant Holland limited leave to amend his complaint on a single issue raised in his response to the motion to dismiss.

## I. Legal Standard

When a party objects to a magistrate judge's Report and Recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985). But "[t]he district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Accordingly, objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II. Analysis of Objections

As an initial matter, Holland has "the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *See Mira*, 806 F.2d at 637. He has not done so. An objection that does nothing more than disagree with the magistrate judge's determination "without explaining the source of the error" is not a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). And generalized objections to a magistrate judge's overall conclusion likewise are insufficient as such objections "effectively duplicate" the functions of the magistrate and district courts. *Id.*

Holland asks this Court to consider his health conditions and issues with comprehension when evaluating his complaint. (ECF No. 19, PageID.188.) Although a pro se litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that leniency is "not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The "basic pleading requirements 'apply to self-represented and counseled plaintiffs alike.'" *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). And while the Court is understanding of Holland's health issues and recognizes that perhaps it is difficult for Holland to explain specific legal errors, the Court also cannot abandon its responsibility to address a defendant's assertion that the complaint does not state a plausible claim.

Holland states that "a jury should be able to make the decision on if the defendant violated plaintiff['s] civil rights[.]" (ECF No. 19, PageID.187.) But there are

4

multiple checkpoints Holland must pass before the Court can allow his case to reach a jury. One such checkpoint is a motion to dismiss, and Holland's current complaint does not make it through.

### A.

The Magistrate Judge found that Holland's claims are premised on the allegation that "Fouts' intervention forced him (Holland) to occupy the infested rental property for over a year." (ECF No. 18, PageID.171.) The Magistrate Judge concluded, however, that this allegation contradicted public records of the eviction proceedings, which show that Holland opposed his eviction and that his eviction was based on nonpayment of rent. (*Id.* at PageID.172.) Holland also states that at one point, he left the home. (ECF No. 14, PageID.123.) In other words, Holland was not forced to live in the home. To the contrary, he left the home at one point and later he was ordered to leave the home for failure to pay his rent. So the Magistrate Judge found Holland's statement that he was forced to stay on the property against his will to be implausible. (ECF No. 18, PageID.173.)

Holland now explains that he was not forced to *physically* remain in the property against his will. Rather, as the Court understands Holland's objection, it is that after Fouts spoke to Holland's landlord, his landlord decided to go back on her prior promise to "release plaintiff from the lease without any argument[.]" (ECF No. 19, PageID.183.) She did so, according to Holland, because Fouts told her to "go after the plaintiff" because of his disability and race. (*Id.*) Holland also states that though he was no longer living in the home, he had to "remain in *the contract for* the home"

5

and "go to the home on a weekly basis just to take photographs of the home" so he was not blamed for any damage that occurred during the repairs. (ECF No. 19, PageID.186 (emphasis added).) A few months later, the landlord told Holland that she had addressed the infestations at the home and Holland could move back in. (*Id.* at PageID.185.) Holland says the infestations were not cured but he was "trapped" at that point because he did not have enough money to leave. (*Id.*)

Holland's objection does indicate that him leaving the home and fighting his eviction are not totally inconsistent with his allegation that Fouts' interference forced him to continue leasing in Warren. Holland also further clarifies that because his landlord did not release him from the rental agreement, allegedly at Fouts' behest, it was like he was forced to live there because he was making rental payments.

But even with this clarification, the Court still has trouble discerning whether Holland wanted to live in the home or not. It appears that Holland did not ultimately want to stay in the home. He states that Fouts interfered with him being released from his rental agreement, which indicates he did not want to remain in the home. He also states that he "wanted nothing to do with the home ever since the first night he moved in, plaintiff was fighting the case because he was no longer living there and couldn't ignore the summons from the lawsuit." (ECF No. 14, PageID.123–124 (cleaned up).)

This clarification, however, does little to persuade the Court that Holland has stated a claim. Even if the Court accepts Holland's claim that he was forced to stay in his rental agreement because Fouts, based on Holland's race and disability,

6

convinced his landlord to change her mind, this does not show that Holland was denied equal protection under the law. Holland has not plausibly shown that his landlord's private decision can be attributed to Fouts. Holland states that he "heard the defendant saying nasty things about him on the phone, he was basically telling the landlord to go after Plaintiffs." (ECF No. 19, PageID.185.) Holland said he heard these comments during a phone call that occurred before his landlord told him that she had the mayor "take care" of the infestation issues. (*Id.*) But based on text messages Holland submitted, his landlord said this statement in the same conversation in which she told him she would let him out of the lease. (ECF No. 14, PageID.131–133.) So if anything, the derogatory statements Holland allegedly heard from Fouts had no impact on his landlord's decision to let him out of the lease, as she said she would let him out of the lease *after* Fouts allegedly told her to go after Holland. In other words, the Court cannot infer that Fouts' intervention had any impact on the landlord's decision to not allow Holland to break his lease.

And to the extent Holland's claim against Fouts is about the city's alleged failure to resolve the infestation issue, it also fails as pled. Holland pleads no facts linking Fouts' actions to the city's alleged inaction. He just states that "the city stopped all inspections and canceled dates for inspections even after the government shutdown ended, but they were able to show up and testify for the landlord, at the defendant request, just not inspect the house[.]" (ECF No. 14, PageID.121.) Fouts cannot be sued merely because he oversees the city department in charge of inspecting rental properties. *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). Instead,

7

Holland must plead facts showing that Fouts took actions that prevented future inspections from occurring because of Holland's race and/or disability. Yet, all Holland has stated is that "Fouts intervened" and that after his landlord met with Fouts, she became Holland's "adversary." (ECF No. 14, PageID.124; ECF No. 19, PageID.187.)

Moreover, Holland has submitted some evidence that the city did inspect the home at one point. He provides a letter from Animal Control that states that in December 2019, Holland's landlord reported cats living in the home's crawl space. (ECF No. 14, PageID.137.) Animal Control responded and worked "with the owner to trap and remove 15 cats. The remaining owned cats were spayed and neutered." (*Id.*) Then, Animal Control said it advised the landlord she could close the crawl space. (*Id.*) Holland also submits an email exchange between a city inspector and his landlord, where the city inspector states he "did not see any cats or cat feces" at the home in July 2020. (ECF No. 14, PageID.136.) So it appears based on Holland's own evidence that the city did inquire about the alleged infestation.

Holland also states that after he complained to his landlord about the infestations, and his landlord did not respond to his concerns, he "contacted the city of Warren, they sent out pest control." (ECF No. 14, PageID.124.) Holland also states that pest control came to the home, identified that "cats and rats have been living in the crawl space for years," and that the landlord refuses to fix it. (*Id.*) According to Holland, the city has contacted the landlord to fill in the crawlspace so animals do not go in there, and the "landlord refused[.]" (*Id.*) This occurred before the landlord

8

told Holland she would release him from his lease. (*See id.*) So it appears that at least before he first left the home, the city inspected the house and directed the landlord to address any issues.

So even though Holland has somewhat clarified how he was forced to lease the house because of Fouts, the Court overrules this objection to the Report as it is not "dispositive" of the 12(b)(6) motion. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, it does not change the conclusion that Holland has failed to state a claim.

### B.

The Magistrate Judge also dismissed Holland's equal-protection claim under the Fourteenth Amendment because Holland had not pled that Fouts took any action with discriminatory intent. (ECF No. 18, PageID.174.) The Magistrate Judge found that Fouts never made a discriminatory remark directly toward Holland. (*Id.*) Further, the Report states that Holland first mentioned Fouts "targeting" Holland and becoming involved in Holland's affairs in his response brief. (*Id.* at PageID.175.) Since arguments are not allegations, the Magistrate Judge did not consider these new facts. (*Id.*)

Holland states in his objection that he heard Fouts tell his landlord on the phone to basically "go after" him and make "disparaging remarks about his disabilities." (ECF No. 19, PageID.186.) Holland explains that he did not include these specific statements in his complaint because he thought they were hearsay. (ECF No. 19, PageID.185.)

9

Even if the Court were to excuse Holland's failure to include these allegations in his complaint, these remarks do not make it plausible that Fouts violated the Equal Protection Clause.

"As this circuit has explained, a valid equal-protection claim requires showing that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Reform America v. City of Detroit, Michigan*, 37 F.4th 1138, 1152 (6th Cir. 2022). As the Magistrate Judge noted, discriminatory remarks alone are not actionable under the Fourteenth Amendment unless "coupled with some additional harassment or constitutional violation[.]" *Taylor v. City of Falmouth,* 187 F. App'x 596, 601 (6th Cir. 2006) (citing *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (concurring opinion)).

Holland's allegations that Fouts used discriminatory language about him and then encouraged Holland's landlord to "go after" Holland do not plausibly show that Holland was subject to disparate treatment under the law. That is because Fouts' statement did not cause Holland's alleged harm.

According to Holland, Fouts encouraged his landlord to "go after" him, which resulted in his landlord not releasing him from his lease and eventually suing to evict him. As mentioned previously, Holland does not plausibly show that Fouts actually influenced his landlord's decision to not allow him out of the lease or to initiate eviction proceedings against him, as these statements were too remote to plausibly influence those decisions.

And Holland's eviction was determined via a state-court proceeding based on the expiration of his lease term, rather than on any actions Fouts may have taken. Fouts did not decide to evict Holland, nor did he control whether Holland was evicted or not. Fouts also did not control what constitutional protections Holland received in these proceedings. And Fouts also was not the ultimate decisionmaker as to whether to enforce eviction laws against Fouts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) (describing purposeful discrimination as a "decisionmaker's undertaking a course of action" because of the adverse effects on an identifiable group); *see also Dep't of Homeland Security v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1915 (2020) ("To plead animus, a plaintiff must raise a plausible inference that an invidious discriminatory purpose was a motivating factor in the relevant decision."). In short, even if Fouts had a discriminatory attitude toward Holland, that animus did not result in the landlord taking action against Holland that would impact Holland's rights or protections under the law. Fouts had no power to do so in relation to Holland being released from his lease or being evicted.

Holland also does not plausibly allege that Fouts' encouragement burdened a fundamental right. Though Holland alleges that Fouts had undue influence over the eviction proceedings because he encouraged city employees to lie while testifying, his claim still fails. The Magistrate Judge explained that the city employees' testimony on infestation would be relevant to whether Holland was constructively evicted, as he said he was. (ECF No. 18, PageID.177.) The Report found that even if the state court had disregarded the city employees' testimony and believed Holland that he

11

had been constructively evicted, he still would have no interest in the property because his landlord served him with a notice to quit at the end of the lease term. (*Id.* at PageID.177–178.) In other words, even if Fouts told his employees to lie during Holland's eviction proceedings, it would not have changed the outcome of the eviction proceedings. Holland's landlord would still have prevailed at the eviction proceedings because the lease had already expired, and she had served Holland with a notice to quit. So Fouts' alleged influence over the proceedings also does not amount to a denial of equal protection or due process under the law.

Holland's arguments now do not change the calculus. Holland does not argue that the Magistrate Judge erred in finding that the city employees' untruthful testimony had no effect on the outcome of the proceedings. And he has not pled that Fouts had any other influence over the court proceedings. He also does not plausibly claim that eviction laws were selectively enforced against him due to Fouts' encouragement, as he does not plead any facts showing that similarly-situated, non-disabled individuals were not evicted by the court.

So even if Fouts targeted Holland, as Holland says, this targeting did not lead to him being denied equal treatment under the law.

### III. Motion to Amend Complaint

Holland also filed a motion to amend his complaint after the Magistrate Judge entered the Report and Recommendation. (*See* ECF No. 23.) In the same vein, Holland objects to the Report because he did not "understand" the form complaint's

12

use of the word "brief" and so he apparently did not state all of his allegations in the complaint. (ECF No. 19, PageID.186.)

The Court must determine whether "justice so requires" leave to amend. *See* Fed. R. Civ. P. 15(a)(2). "To evaluate whether justice so requires, the court must consider . . . undue delay in filing[,] undue prejudice to the opposing party, and futility of amendment." *Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 328 (6th Cir. 2020) (internal citations omitted). A motion to amend is futile "where a proposed amendment would not survive a motion to dismiss." *Id.* at 329.

The Court has reviewed Holland's proposed amended complaint. (ECF No. 23.) The allegations within that complaint fail to state a claim for the reasons already described in this order. So if Holland were to amend using this complaint, it would be futile. *See Banerjee*, 820 F. App'x at 328.

But there is one possible exception. Holland does describe one narrow issue the Court believes could present a plausible claim. In his response to Fouts' motion to dismiss, Holland states that Fouts told the landlord that "he would make sure 'no more inspections' would be done on the home, this way the landlord would not have to comply with the law, and [Fouts] did exactly what the landlord said he did, the city stopped all inspections and canceled dates for inspections even after the government shutdown ended[.]" (ECF No. 14, PageID.121.) Holland states that Fouts said these things to his landlord after making derogatory comments about Holland's disability and race. (*Id.*)

13

This allegation was not adequately made in Holland's complaint, so as the complaint currently reads, Holland has not stated a plausible claim for relief. In light of this statement in his response brief, however, the Court will GRANT Holland partial leave to amend his complaint.

Holland may submit an amended complaint limited solely to the narrow equal-protection claim he makes against Fouts regarding Fouts' alleged promise to Holland's landlord that no more inspections would be done on the home and, as a result, the city's subsequent failure to inspect the home because of Holland's disability or race.

Holland is advised that if he makes allegations that go beyond this limited issue, the Court will strike his complaint as non-compliant with this order.

Further, because Holland is proceeding *in forma pauperis*, if he chooses to amend the complaint in compliance with this Court's direction and it survives this Court's screening under 28 U.S.C. § 1915(e)(2)(B), Fouts will have an opportunity to respond.

### IV. Order

In sum, the Court overrules Holland's generalized objections to the Magistrate Judge's Report. The Court ADOPTS the Report (ECF No. 18) and GRANTS Fouts' motion to dismiss (ECF No. 13). Holland's current complaint (ECF No. 1) will be DISMISSED.

Holland's motion to amend the complaint (ECF No. 23) is GRANTED IN PART. Holland is limited to filing an amended complaint solely on the equal-protection claim

alleging Fouts prevented city inspections of the home Holland rented because of Holland's race or disability so Holland's landlord would not have to comply with housing law. This amended complaint must be submitted within two weeks of this order by August 15, 2022.

If Holland does not limit his amended complaint to the issue identified above, the complaint will be stricken, and the case will be dismissed. And if Holland fails to timely amend his complaint, this case will be dismissed.

If Holland amends his complaint pursuant to this Court's order and it survives the Court's screening pursuant to 28 U.S.C. § 1915(e)(2)(B), Fouts will have an opportunity to respond.

SO ORDERED.

Dated: August 1, 2022

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE