UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CORY HOLLAND, SR., <br><br> Plaintiff, <br><br> v. <br><br> JAMES FOUTS, <br><br> Defendant. | Case No. 21-cv-12265 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF NO. 26) AND TO ENJOIN PLAINTIFF FROM FILING LAWSUITS IN THIS DISTRICT WITHOUT LEAVE OF COURT**

**I.  Introduction**

Plaintiff Cory Holland, Sr., filed this pro se civil rights action under 42 U.S.C. § 1983 against Defendant James Fouts, the city of Warren's mayor. ECF No. 25.  Fouts moves to dismiss the case.  ECF No. 26.  The Honorable Laurie J. Michelson referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 10.  The Court recommends that Fouts's motion be **GRANTED** and that Holland be enjoined from filing lawsuits in this district without obtaining leave of court.

## II.  Background

Holland originally alleged that he rented a home in Warren, Michigan, from Carlotta Cardenas but that it was uninhabitable because of cat, rodent, and insect infestations.  ECF No. 1, PageID.5.  Cardenas allegedly agreed to release Holland from the lease, but Fouts—a friend of hers—persuaded her to change her mind.  *Id.*  Fouts also allegedly "intervened" to stop the home from being inspected by the city.  *Id.*  Holland asserted equal protection and due process claims against Fouts, claiming that he acted with discriminatory animus and prevented Holland from leaving the infested house.  *Id.* at PageID.4-5.

Judge Michelson adopted the Court's recommendation to grant Fouts's first motion to dismiss, finding that Holland failed to state a plausible claim.  ECF No. 24.  But she gave Holland leave to file "an amended complaint limited solely to the narrow equal-protection claim regarding Fouts' alleged promise to [Cardenas] that no more inspections would be done on the home and, as a result, the city's subsequent failure to inspect the home because of Holland's disability or race."  *Id.* at

PageID.264 (cleaned up).  Judge Michelson warned Holland that the Court would strike his complaint if he strayed from that issue.  *Id.*

Holland amended his complaint and now alleges that he overheard a phone call between Fouts and Cardenas in June or July 2020, after Cardenas allegedly released him from the lease.  ECF No. 25, PageID.270, 272.  Fouts allegedly made offensive remarks about Holland's race and disability and told Cardenas not to release Holland from the lease.  *Id.* at PageID.270.  Fouts also allegedly told Cardenas that he would block any inspections from taking place so she would not have to make repairs or deal with the infestations.  *Id.*  Holland claims that Fouts followed through with this plan, as the city cancelled a scheduled inspection of the house's interior.  *Id.* at PageID.270, 272.  A city inspector allegedly told Holland that the inspection was "blocked" by "a higher authority" and to "check the mayor's office."  *Id.* at PageID.277 (cleaned up).  The inspector also allegedly told Holland that the city was inspecting the interiors of other homes and that the restriction was unrelated to COVID-19.  *Id.*  Thus, Holland claims that he was treated differently than others because of Fouts's discriminatory animus.  *Id.* at PageID.277-278.

Fouts again moves for dismissal, arguing that Holland fails to state a plausible equal protection claim because his allegations conflict with public records. ECF No. 26. The Court agrees.

### III. Analysis

### A.

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S. at

678.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007).  Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

     Although the plausibility of a complaint is usually assessed on the face of the complaint, a court may also consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  And "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money*, 508 F.3d at 335-36; *see also Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997).

Thus, the Court has considered statewide executive orders, Holland's state-court filings, and press releases and public records documenting the city's operation status and its inspections of the rental property. Those records show that Holland's factual claims lack plausibility.

**B.**

"The hallmark of the Equal Protection Clause is that 'all persons similarly situated should be treated alike.'" *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 976 (E.D. Mich. 2016) (quoting *City of Cleburne v. City of Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To state an equal protection claim, a plaintiff must plausibly allege that the defendant treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). The plaintiff must also show discriminatory intent or purpose. *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003). Even if Fouts acted with discriminatory intent, Holland has not plausibly alleged that he was treated differently than others seeking a rental property inspection.

Holland's lease began in March 2020, the beginning of the COVID-19 pandemic. *See* ECF No. 13-3, PageID.58. Governor Gretchen Whitmer

issued a series of executive orders declaring a state of emergency and suspending non-essential business activities.[1] Fouts likewise closed the city's non-essential offices in March 2020. ECF No. 26-3, PageID.360-361. The city's rental division—the department in charge of rental property inspections—is in city hall, which reopened for appointment-only access in late August 2020. *Id.* at PageID.363-364. It closed again in November 2020 because of a COVID-19 surge. *Id.* at PageID.366-370.

Evidence shows that the city inspected the rental property after the alleged phone call between Fouts and Cardenas. Contrary to Holland's allegation that an inspection was cancelled after that call, a city inspector informed Cardenas by email that he "did not see any cats or cat feces" at the property in July 2020. ECF No. 14, PageID.136. In August 2020, the rental division informed Cardenas that the property did not pass an exterior inspection and directed her to make certain repairs. ECF No. 26-2, PageID.352-353. The notice also stated that an interior inspection would be required "once the city determines it is safe for interior inspections." *Id.* (cleaned up).

---

[1] *See, e.g.*, EO 2020-05, *available at* https://perma.cc/GWA8-VBT5 (last visited January 17, 2023); EO 2020-21, *available at* https://perma.cc/B3GK-VZSS (last visited January 17, 2023).

The rental division determined in January 2021 that the property passed the exterior inspection. ECF No. 26-2, PageID.355. Although a November 2020 interior inspection was cancelled, the January 2021 notice again stated that an interior inspection would be required and directed Cardenas to "call the office the middle of January to see if it is safe to schedule your interior inspection." *Id.* at PageID.354-355. The rental division followed up in May 2021 with a "courtesy letter due to COVID-19 virus" to notify Cardenas that an interior inspection needed to be scheduled. *Id.* at PageID.343 (cleaned up). The rental division also investigated Holland's allegations of infestations in March 2021, as the office received documents from contractors stating that employees observed no cats or rodents in the crawlspace, no insects, and no access points. *Id.* at PageID.331-334.

Holland alleges that no COVID-19 restrictions were in effect when his inspections were cancelled, as an inspector told him that the rental division was inspecting the interiors of other houses. *See* ECF No. 25, PageID.272, 277; ECF No. 28, PageID.406, 408, 410. Those allegations are not plausible given the evidence discussed above. Holland argues that the statewide shutdown ended in June 2020 and that interior inspections could take place between August 2020 and November 2020. ECF No. 25,

8

PageID.272; ECF No. 28, PageID.410.  Governor Whitmer lifted the statewide stay-at-home order in June 2020, but the city's operations remained restricted as detailed above.[2]  And while city hall reopened in August 2020 for scheduled appointments, rental division records state that interior inspections were not taking place until the city determined it was safe.  ECF No. 26-2, PageID.352-355; ECF No. 26-3, PageID.363-364.

Holland's arguments also conflict with his own allegations.  During the state-court eviction proceedings, Holland admitted that the interior inspection was delayed because of the pandemic.  ECF No. 26-4, PageID.374 ("Defendant decided to call the city, and ask them for guidance, they told [me] they would do inspection of the 'outside of home,' because due to COVID-19, they were not allowed to enter the inside.").  And Holland even admitted in his response that the inspector who told him that the inspection was "blocked" by the mayor's office explained that he could only inspect the exterior "due to the health situations that could threaten the city."  ECF No. 28, PageID.410.

These conflicting statements are just one example of Holland's shifting narrative.  In his original complaint, Holland claimed that Cardenas

---

[2] *See* EO 2020-110, *available at* https://perma.cc/9RDD-KHVY (last viewed January 18, 2023).

used racial slurs against him after speaking with Fouts and that Fouts was "known for" using offensive language. ECF No. 1, PageID.5. Holland later argued that Cardenas told him that Fouts used racial slurs against him and said he would stop any inspections. ECF No. 14, PageID.121. Now Holland alleges that he overheard Fouts make those statements because Cardenas had Fouts on speakerphone. ECF No. 25, PageID.270. That allegation is inconsistent not only with Fouts's earlier allegations but also with his request in the state-court action to subpoena Fouts to discover what he discussed with Cardenas. ECF No. 26-4, PageID.374.

In sum, the public records show that the rental division inspected the property exterior after Fouts's and Cardenas's alleged call. An interior inspection could not be completed in 2020 because COVID-19 restrictions prevented any interior inspections from taking place. That is, the rental division ceased *all* interior inspections and did not selectively deny Holland's request for one. Even Holland's generalized claim that the rental division was inspecting other houses fails to show disparate treatment, as he does not allege that the inspections were performed for residents of other races or disability statuses. *See Harris v. Morris*, No. 16-11162, 2017 WL 9476832, at *7-8 (E.D. Mich. Feb. 8, 2017), *aff'd*, 2017 WL 8776683 (6th Cir. Oct. 26, 2017) ("Plaintiff here has failed to allege that defendants

10

treated any non-black student differently from how he was treated, or that another non-black student engaged in the same conduct that he did, but was treated more favorably."). Thus, Holland's equal protection claim fails because he has not plausibly alleged that he was treated differently or denied an inspection because of his race or disability.

### C.

"There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). There is nothing wrong with an order that "restrains not only an individual litigant from repeatedly filing an identical complaint, but that places limits on a reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category." *Id.*

To determine whether a permanent injunction is warranted, courts consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.,* does the litigant have an objective good faith expectation of prevailing?, (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of

11

vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Kersh v. Borden Chem., a Div. of Borden, Inc.*, 689 F. Supp. 1442, 1450 (E.D. Mich. 1988) (cleaned up).  Having considered these factors, the Court finds that Holland's litigation conduct calls for a permanent injunction.[3]

**1.**

Holland had been a prolific pro se filer over the past seven years. Since 2015, Holland has filed 12 federal cases in this district, nine of which were filed in the past two years.[4]  Most of the cases were dismissed sua

---

[3] The Court made the same recommendation in *Holland v. Madison Heights Police Dep't*, No. 2:21-cv-10629 (Michelson, J.).

[4] Those cases are: (1) *Holland v. Macomb Cnty.*, No. 2:15-cv-12849 (Cox, J.) (dismissed for failure to state a claim, affirmed by the Sixth Circuit); (2) *Holland v. Best Buy*, No. 2:16-cv-10817 (Hood, J.) (dismissed by parties' stipulation); (3) *Holland v. Dep't of Health & Human Servs.*, No. 2:16-cv-12794 (Battani, J.) (dismissed for failure to state a claim); (4) *Holland v. Nessel*, No. 2:21-cv-10578 (Murphy, J.) (dismissed sua sponte as frivolous); (5) *Holland v. Madison Heights Police Dep't*, No. 2:21-cv-10629 (Michelson, J.) (R&R recommending dismissal for failure to state a claim pending); (6) *Holland v. Sherman*, No. 2:21-cv-11246 (Edmunds, J.) (dismissed sua sponte for lack of jurisdiction); (7) *Holland v. Sherman*, No. 2:21-cv-11319 (Goldsmith, J.) (dismissed sua sponte for lack of jurisdiction); (8) *Holland v. Dwyre*, No. 2:21-cv-11756 (Murphy, J.) (dismissed sua sponte as frivolous); (9) *Holland v. Mansfield*, No. 2:21-cv-1773 (Roberts, J.) (dismissed sua sponte as frivolous); (10) *Holland v. Fouts*, No. 2:21-cv-12265 (Michelson, J.) (recommendation to dismiss amended complaint pending); (11) *Holland v. Doddamani*, No. 2:22-cv-10383 (Berg, J.) (dismissed sua sponte as frivolous); and (12) *Holland v. St. John Hosp.*, No. 2:22-cv-10668 (Hood, J.) (motions to dismiss pending).

sponte as frivolous, with judges describing Holland's pleadings as "a string of convoluted facts," "lengthy, disjointed, and difficult to follow," "unclear," and "fanciful." Two judges warned Holland that filing more frivolous suits would lead him to be placed on enjoined filer status. *Holland v. Doddamani*, Ord. Dismissing Compl., ECF No. 8, PageID.86, No. 2:22-cv-10383 (Berg, J.) ("Despite repeated dismissals for failure to state a claim, Mr. Holland continues to file lawsuits related to this conduct. If Mr. Holland files a second similarly frivolous complaint, he may be enjoined from filing new lawsuits or face other sanctions." (cleaned up)); *Holland v. Dwyre*, Ord. Dismissing Compl., ECF No. 5, PageID.16-17, No. 2:21-cv-11756 (Murphy, J.) ("The present order memorializes the second instance that the Court has dismissed a baseless complaint from Plaintiff. If any vexatious conduct continues, the Court may enjoin Plaintiff from filing new actions without first obtaining permission.").

Thus, Holland has filed multiple lawsuits that have been dismissed as frivolous. Without an injunction, Holland will likely flood this district with more baseless lawsuits.

### 2.

As described above, Holland's complaints have been rejected as frivolous and difficult to follow. And he has refiled actions based on

allegations that were previously rejected as frivolous. The Court finds that Holland has no good faith expectation of prevailing in his lawsuits, and that factor supports a permanent injunction. *See Kersh,* 689 F. Supp. at 1451

### 3.

"Frivolous, vexatious, and repeated filings by pro se litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit and filed by litigants willing to follow court orders." *U.S. ex rel. Verdone v. Circuit Court for Taylor Cty.*, 73 F.3d 669, 671 (7th Cir. 1995). Thus, Holland's pro se status favors imposing an injunction. *See Kersh,* 689 F. Supp. at 1451; *Daniel v. DTE Energy*, No. 11-13141, 2013 WL 4502151, at *5 (E.D. Mich. Aug. 22, 2013).

### 4.

The Court has no evidence about the expense to other parties, but the volume of Holland's lawsuits suggests that they have burdened other parties. And serial lawsuits like those filed by Holland divert scarce judicial resources from legitimate legal disputes. *U.S. ex rel. Verdone,* 73 F.3d at 671.

### 5.

While monetary sanctions may be warranted here, they would "likely only create further litigation by [Holland], in the form of appeals or suits

against this Court." *Kersh*, 689 F. Supp. at 1451; *see also Nuckols v. Grace Centers of Hope*, No. 07-13735, 2007 WL 4454298, at *4 (E.D. Mich. Dec. 14, 2007) ("Because Mr. Nuckols' response to an adverse ruling is to file a suit against its source, no other sanction would serve to protect this Court and other parties.").

**6.**

Holland has a history of vexatious litigation that is likely to continue to abuse the judicial process, harass other parties, and harass the judges. Thus, an injunction should be entered against him that is "sufficiently tailored to the vice so as not to infringe upon the litigator's right of access to the courts." *Ortman v. Thomas*, 906 F. Supp. 416, 422 (E.D. Mich. 1995). The injunction should preclude Holland from filing any new federal actions in the Eastern District of Michigan without obtaining leave of court, and ordering that any action filed without leave be stricken.

To obtain leave to file a new action, Holland should be ordered to:

- file a "Motion Pursuant to Court Order Seeking Leave to File" with any proposed complaint;
- attach as an exhibit to that motion a declaration under 28 U.S.C. § 1746 or an affidavit certifying that his complaint

15

- is not prohibited by the permanent injunction, and that it is not frivolous or made in bad faith;

- identify and list in a second exhibit: (1) the full caption of every suit which has been previously filed by him or on his behalf in any court against every defendant in the suit that he wishes to file, and (2) the full caption of every suit which he has currently pending;

- provide, in a third exhibit, a copy of each complaint covered by the preceding paragraph and a certified record of its disposition. He must serve a copy of this order on each defendant if leave to serve is granted;

- append the order granting the permanent injunction to any new action that he may hereinafter file in any court.

The preliminary injunction should state that it does not impair Holland's ability to defend himself in any criminal action. Finally, the Court should retain jurisdiction to modify this injunction as necessary where circumstances may change.[5]

---

[5] This recommended injunction borrows heavily from, and is supported by, *Kersh*, 689 F. Supp. at 1452-53, and *Day v. OnStar, LLC*, No. 19-10922, 2019 WL 3322437, at *8 (E.D. Mich. July 3, 2019), *adopted*, 2019 WL 3315278 (E.D. Mich. July 24, 2019).

## IV.   Conclusion

The Court thus **RECOMMENDS** that Fouts's motion to dismiss be **GRANTED** (ECF No. 26) and that Holland be enjoined from filing lawsuits in this district without obtaining leave of court.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: January 23, 2023

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 23, 2023.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
