UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CORY HOLLAND SR., <br><br> Plaintiff, <br><br> v. <br><br> JAMES FOUTS, <br><br> Defendant. | Case No. 21-12265 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER OVERRULING OBJECTIONS [31], ADOPTING REPORT AND RECOMMENDATION [30], AND GRANTING FOUTS' MOTION TO DISMISS [26]**

Cory Holland, Sr. brings this suit against the mayor of the City of Warren, James Fouts, alleging that Fouts used his position as mayor to interfere with Holland's dealings with his landlord for discriminatory reasons. Holland says he was renting a house in Warren that was infested with rats, cats, and insects. After informing his landlord about the infestation, he asked if he could break his lease and leave the house. His landlord apparently agreed. But a week later, Holland says that his landlord changed her mind because she had spoken to Fouts, who was her personal friend. Fouts allegedly told Holland's landlord "to go after" Holland. As a part of this plan to "go after" Holland, Fouts allegedly told Holland's landlord that he would stop any city inspections from taking place at the rental property. Holland states that Fouts prevented these inspections due to Holland's race and disability.

So Holland filed a pro se complaint alleging that Fouts violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (ECF No. 1,

PageID.4.) All pretrial matters were referred to Magistrate Judge Elizabeth Stafford. Fouts filed a motion to dismiss Holland's complaint under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 13), which was granted by this Court (ECF No. 24). However, the Court permitted Holland to file an amended complaint on a limited issue, which he did. (*See* ECF No. 25.) Fouts again moved to dismiss (ECF No. 26), and Magistrate Judge Stafford recommended the motion be granted (ECF No. 30). This recommendation and Holland's objections are now before the Court.

For reasons that will be explained below, the Court will overrule Holland's objections and adopt the recommended disposition.

I.

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate [judge's] report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II.

### A. Motion to Dismiss

A brief reminder of the relevant procedural history is helpful before the Court addresses Holland's specific objections.

As explained, the Court has granted in part a prior motion to dismiss in this case. But it gave Holland leave to amend his complaint on the "narrow equal-protection claim he makes against Fouts regarding Fouts' alleged promise to Holland's landlord that no more inspections would be done on the home and, as a result, the city's subsequent failure to inspect the home because of Holland's disability or race." *Holland v. Fouts*, No. 21-12265, 2022 WL 3035997, at *6 (E.D. Mich. Aug. 1, 2022). So the only remaining issues in this litigation are whether the City of Warren inspected Holland's rental home, and if it did not, whether the failure to inspect stemmed from Fouts' discriminatory animus.

The Report and Recommendation suggests, with the benefit of public records that can be considered on a motion to dismiss,[1] that neither issue is plausibly pled. Specifically, Holland alleges that Fouts told his landlord that he would prevent any inspections of the property in July 2020. But Magistrate Judge Stafford found that the City conducted exterior inspections of Holland's home in August 2020, only one month later. And Magistrate Judge Stafford found that an interior inspection could not be conducted due to the City's COVID-19 restrictions. (ECF No. 30, PageID.495.)

---

[1] A court may consider public records when considering a motion to dismiss, *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), and neither party objected to the consideration of such records at this stage.

Thus, Fouts did not improperly deny Holland a city inspection of his property for discriminatory reasons, so Holland had not pled an Equal Protection claim. *Id.*; *see also Reform America v. City of Detroit, Michigan*, 37 F.4th 1138, 1152 (6th Cir. 2022) ("As this circuit has explained, a valid equal-protection claim requires showing that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.").

Holland's objections to this conclusion do not persuade the Court to find otherwise.

Holland objects to what he refers to as the "inspection allegations." (ECF No. 31, PageID.505.) He says that, despite public records showing otherwise, no inspection of the property occurred in July 2020. (*Id.*) And for the inspection that occurred in August 2020, Holland says this inspection does not defeat his claim because the external inspection was only conducted due to a prior rat infestation on the property and because no internal inspection occurred. (*Id.* at PageID.505–507.)

Even taking as true that Holland did not actually receive an inspection in July 2020, or perhaps that the inspection produced an inaccurate report, Holland has not pled a plausible Equal Protection claim. His Equal Protection claim is that Fouts prevented any inspection from taking place because he was discriminating against Holland. But the Equal Protection Clause does not entitle Holland to an inspection in a specific month. So Holland not receiving an inspection in July 2020 is not indicative of an Equal Protection violation, especially given that Holland admits that

he received an exterior inspection just one month after, in August 2020. Though Holland goes back and forth on this point in his objections, he states several times that he spoke to a city inspector on August 26, 2020 during an exterior inspection of the property. (ECF No. 31, PageID.506 ("the home FAILED to pas[s] the exterior inspection, on August 26, 2020"); *id.* ("The City Inspector said on August 26, 2020, when defendant CANCELED the prescheduled "Interior and Exterior" Inspection, right after the Call Plaintiff Overheard, where he said he would "BLOCK" the August 26, 2020 Inspection[.]").)

These allegations are corroborated by public records showing that the City sent Holland's landlord a letter on August 27, 2020 stating that the rental property did not pass an exterior inspection. (ECF No. 26-2, PageID.352.) This letter also gave Holland's landlord 10 days to complete necessary repairs, and Holland states in his objections that she completed repairs in September. (*Id.*; ECF No. 31, PageID.506 ("The City then ordered the landlord (Cardenas) to do the repairs, (FILL THE HOLES IN THE CRAWL SPACE), she then hired contractors to do just that. The Cement Guy Cardenas hired, confirmed there was indeed "RATS", "IN THE CRAWL SPACE[.]").) So it appears that Fouts did not completely block inspections of the home, contrary to Holland's allegations. And it also appears that Fouts did not do Holland's landlord any favors, as she was required to make repairs after failing the exterior inspection.

Holland also objects to the Report's finding that COVID-19 prevented an interior inspection of the home. Holland states that, "[t]he health emergency

according to the City inspector was the rats, not Covid 19, again the evidence supports that, because the next City Inspection appointment came after the Cement Guy filled the holes in the foundation, where he said rats were living, again nothing to do with Covid 19." (ECF No. 31, PageID.505 (cleaned up).) Reviewing this objection, the Court believes there is a misunderstanding. Holland may very well be correct that the reason the City conducted an inspection of his rental property is because it wanted to prevent a rat reinfestation. And he may be correct that rats were indeed found in the house. But that does not mean that there was not a separate public health emergency concerning COVID-19. Further, when the City states that COVID-19 prevented it from conducting an interior inspection in August, it does not mean that the City specifically thought that the interior of Holland's home presented a risk of COVID-19. Instead, it means that the City was not allowing its employees to go into any private residences as a public safety measure. In other words, Holland was not denied an interior inspection because he had COVID-19, but because city employees were not to go inside *any* homes because of the general risk of contracting COVID-19. So Holland's objection that the rat infestation was the health emergency, and not COVID-19, does not change whether an interior inspection of the home was not conducted due to COVID-19.

Public records support this conclusion too. The August 2020 letter sent to Holland's landlord stated that "[a]n interior inspection will be required once the city determines it is safe for interior inspections." (ECF No. 26-2, PageID.352.) And Fouts declared a state of emergency for the City of Warren on March 23, 2020. (ECF No. 26-

6

3, PageID.360.) On August 31—after Holland's scheduled inspection—City Hall opened by appointment only (ECF No. 26-3, PageID.363), but was closed again on November 18 (*id.* at PageID.369) due to the resurgence of COVID-19 cases.

To rebut these records, Holland says that a city inspector told him that "other homes were being inspected on the inside, but not his, due to the defendant blocking it for personal reasons, against the plaintiff, NOT Covid-19[.]" (ECF No. 31, PageID.506.) At bottom, this conclusory allegation does not plausibly plead disparate impact. Without alleging any facts or comparators, the Court cannot say it is plausible that Fouts treated Holland differently from other residents of Warren because of his race or disability. *See Reynolds v. City of Ferndale*, 545 F. Supp. 3d 533, 541–42 (E.D. Mich. 2021), *aff'd sub nom. Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191 (6th Cir. Aug. 18, 2022) ("Because Plaintiff has not pled any facts to support the allegation that Reynolds was treated differently than a white person in her situation would have been treated, the equal protection claim fails to state a claim upon which relief may be granted."). So even if such an allegation could rebut the public records showing that the City ceased all interior inspections for COVID-19, it still does not cure the complaint's failure to allege disparate treatment. And Holland's explanation that he needs discovery to allege disparate treatment is contrary to what the law requires. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

7

Holland further argues that the State of Michigan had lifted its COVID-19 emergency order in the summer of 2020. (ECF No. 31, PageID.509 ("the State of Michigan dropped its shut down order, in June 2020, but according to the City of Warren, they still were not doing 'Interior Inspections' in June 2020, even after Gov Gretchen Whitmer announced the shutdown of Michigan had been lifted[.]"). Even if that is true, localities were able to extend their emergency orders and determine when to resume operations safely. So this allegation has no bearing on whether the City of Warren truly ceased to conduct interior inspections. And it appears that the State of Michigan reenacted several emergency orders after June 2020, so the relaxed restrictions in June 2020 do not provide a complete picture of when the state resumed full operations. *See, e.g.*, Executive Order 2020-165: Declaration of state of emergency and state of disaster related to the COVID-19 pandemic, https://perma.cc/KL2K-PAJF (declaring a state of emergency for COVID-19 on August 7, 2020 in effect through September 4, 2020).

Further, Holland's theory that his rental property did not receive an interior inspection for reasons other than COVID-19 is contrary to representations he has made in other litigation. For example, in Holland's response to summary judgment in his eviction proceedings, he states that when he contacted the City to inquire about an inspection, it told him that officials would conduct only an external inspection because of COVID-19. (ECF No. 26-4, PageID.374.) He also confirms that the City conducted an inspection of the exterior and is "scheduled to inspect the inside of the home[.]" (*Id.*)

8

\* \* \*

In sum, the Court overrules Holland's objections. Public records (and Holland's own representations) confirm that the City did not refuse to inspect Holland's rental property due to Fouts' alleged discriminatory animus. An external inspection was conducted in August 2020 and his landlord was held accountable for any issues. So it is not plausible that Fouts discriminated against Holland by denying him inspections of his rental property in violation of the Equal Protection Clause.

As for not receiving an internal inspection of his property, the Court finds that Holland has not plausibly alleged that this denial was discriminatory. Public records confirm that the City was shut down due to COVID-19 and that it scheduled an interior inspection as soon as it was safe to do so. And Holland has not sufficiently alleged that he was treated differently by not receiving an interior inspection. This is especially so in light of the City conducting an exterior inspection and finding that the property was not in compliance with city regulations. It is not plausible that on the one hand, Fouts' discriminatory animus against Holland caused him to block an interior inspection, but that on the other, he allowed an exterior inspection to take place that required the landlord to remediate violations of the city code. So the Court adopts the recommended disposition and grants Fouts' motion to dismiss.

### B. Enjoining Plaintiff

The Court has recently explained its decision not to enjoin Holland. *See Holland v. Madison Heights Police Dep't*, No. 21-10629, 2023 WL 1325494, at *9 (E.D. Mich. Jan. 31, 2023) ("[T]he Court expects [Holland] to comply with these guidelines

in the future, and advises Holland that if he does not, it will strongly consider an injunction on filing. But as of now, the Court is not persuaded that Holland needs permission before filing a new suit."). The Court's reasoning is applicable here too. So the Court will not enjoin Holland at the moment but will consider doing so in any future case Holland brings if he does not adhere to the guidelines provided by this and prior rulings.

### III.

In sum, the Court overrules Holland's objections (ECF No. 31) and adopts the recommended disposition (ECF No. 30). Fouts' motion to dismiss (ECF No. 26) is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: February 15, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE